UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No. 06-118 (HHK) |
| | : | |
| **MICHAEL CRISTWELL,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO
<u>MOTION TO SUPPRESS PHYSICAL EVIDENCE</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its opposition to the Motion to Suppress Physical Evidence (Motion to Suppress) filed by the defendant on July 17, 2006. In support of this opposition, the United States submits the following:

1. The defendant has been indicted on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1).

2. This charge arises out of the execution of a search warrant on February 6, 2006, by members of the Criminal Investigative Unit of the United States Attorney's Office and the Metropolitan Police Department, at the defendant's residence located at 2302 Minnesota Avenue, S.E., Washington, D.C. Simultaneously, a search warrant was executed on the defendant's vehicle, a white Cadillac bearing D.C. license plate number CJ3093. These search warrants were executed pursuant to an investigation of the defendant for violations of the District of Columbia's Pandering laws. A subsequent search warrant was executed on a black Nextel Motorola i860 cellular telephone found during the search of the defendant's home on February 6, 2006.

3. The defendant now moves to suppress evidence that was recovered during his arrest on February 2, 2006 and evidence recovered pursuant to the search of his home on February 6, 2006. See Motion to Suppress, pp. 2-5. Specifically, the defendant asserts that the affidavit did not establish probable cause for a search of his residence for the items listed in the warrant. See Motion to Suppress, p. 2. In addition to failing to mention all of the facts presented in the affidavit, a review of the affidavit demonstrates that the defendant's motion is simply wrong. Indeed, there was a substantial basis for the issuance of the search warrant at issue in this case.

4. The affidavit reflects that Investigator John Marsh, a criminal investigator with sixteen years of experience participating in over 2000 arrests and in numerous investigations of violent crimes, narcotics trafficking, computer-based crimes, and commercial sex trafficking, submitted an application for a search warrant for 2302 Minnesota Avenue, S.E., Washington D.C. In his affidavit, Marsh stated that on January 2, 2006,[1] the defendant was arrested outside of his residence at 2302 Minnesota Avenue, S.E. pursuant to an arrest warrant issued on January 1, 2006. Marsh incorporated the arrest warrant by reference into the search warrant affidavit. The arrest warrant provides details regarding the defendant's prostitution of a sixteen year-old female during the first few weeks of January 2006, including the fact that she gave all of the money she earned from prostitution to the defendant.

5. According to the search warrant affidavit, at the time of his arrest, the defendant was walking outside of his residence with a dog. After approaching him, investigators took the defendant and the dog back to 2302 Minnesota Avenue S.E. where they encountered a female

---

[1] Although the search warrant affidavit stated that the defendant's arrest occurred on January 2, 2006 pursuant to an arrest warrant issued on January 1, 2006, it is clear from the arrest warrant that "January" was a typo and that it should have been "February."

subject, later identified in the affidavit as W-1. In the presence of the investigators, the defendant told W-1 to go upstairs to get his cellular telephone, and she reappeared at the top of the stairs with a silver phone. The defendant then told W-1 that he did not want that phone but a different one. W-1 then retrieved a black Motorola phone. Also, W-1 told Marsh that she did not believe she would be able to stay in the residence after the defendant's arrest, and she asked Marsh to escort her to the defendant's room to retrieve some of her clothing. In the bedroom, Marsh stated that he observed a Sprint cell phone box and several items of clothing. In a subsequent interview, Marsh also learned that the defendant had beaten W-1 and thrown her clothes out onto the rear roof of the house. These clothes were subsequently recovered in the unattached garage belonging to the defendant's residence. W-1 also told Marsh that the defendant had a camera phone, and that he had taken pictures of her engaged in sex acts.

      6. The affidavit stated that through W-1 and the sixteen year-old complainant (both of whom had worked as prostitutes for the defendant), Marsh learned that the defendant used cell phones for advancing his prostitution business. The defendant communicated with both W-1 and the complainant while they were working as prostitutes in hotels near the New York Avenue prostitution "track" in the District of Columbia. The defendant gave each of the women cellular telephones to use, and according to the affidavit, both witnesses believed that the phones may have been left in the defendant's residence.

      7. In the search warrant affidavit, Marsh also described an interview with the defendant's mother in which she confirmed that the defendant had lived with her since his release from incarceration in May 2005 and that he kept items of property in various places in her home. The defendant's mother told investigator Marsh she was not sure where W-1's clothing may have been

placed.

8. Marsh further noted in the affidavit that based on his training and experience, pimps often use cellular phones as a means of keeping track of the women working for them. Pimps also purchase clothes for themselves and for their prostitutes out of prostitution earnings. Marsh also noted that pimps will keep items of evidence of their trade including pictures, documentation of telephone numbers and other business records, condoms and other instruments related to prostitution, and computer electronic devices including PDAs, to store information and pictures.

9. Based upon all the foregoing information, Investigator Marsh requested that a warrant be issued for 2302 Minnesota Avenue, S.E. Marsh included among the items to be seized: cellular telephones, files, records, photographs, or any other memorialization of the defendant's pandering, clothing, condoms, sex toys, and any other instruments of the commercial sex trade. The Honorable Bruce Beaudin, a D.C. Superior Court judge, found that there was probable cause for the issuance of a search warrant of the defendant's residence and vehicle, and signed the warrants on February 6, 2006.

10. The defendant's Motion to Suppress contends that there was no probable cause for Judge Beaudin to issue the search warrant of his residence. However, the defendant's motion completely ignores certain facts that were presented to Judge Beaudin and fails to consider the deference owed when a judicial officer makes a finding of probable cause. Therefore, the Motion to Suppress should be denied.

### The Defendant's Motion to Suppress Should be Denied Because there was Substantial Evidence in the Record to Support a Finding of Probable Cause

11. The facts and circumstances set forth in Investigator Marsh's affidavit provided substantial evidence for the judicial officer to make a finding of probable cause for the issuance of

a search warrant for 2302 Minnesota Avenue, S.E. Washington, D.C.

12. In determining whether an affidavit establishes probable cause for the issuance of a search warrant, the judicial officer must employ a totality of the circumstances analysis. Illinois v. Gates, 462 U.S. 213, 231-32 (1983). Simply put, the task of the judicial officer is to make a practical, common sense determination of whether, given all of the circumstances set forth in an affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id.[2] In turn, a court reviewing the decision of the judicial officer to issue the warrant is only to ascertain whether there was a "substantial basis" for reaching a conclusion that probable cause has been established. Id. A reviewing Court is to show "great deference" to the determination of probable cause made by the judicial officer. United States v. Johnson, 437 F.3d 69, 71 (D.C. Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 236-37 (1983)). Applying this standard here, it is clear that there was a substantial basis for Judge Beaudin to make a determination of probable cause. The defendant's motion contends that 1) there was an insufficient nexus between the 2302 Minnesota Avenue, S.E. address and the cellular telephones that were collected there and 2) the affidavit lacked credible and reliable evidence sufficient to negate the good faith exception. The defendant's arguments are without merit and his motion should be denied.

13. In United States v. Johnson, the Court rejected the defendant's contention that the search warrant affidavit failed to connect the alleged criminal drug activity to the defendant's address. In that case, the connection between the criminal conduct and the defendant was indirect. While the police had not observed the defendant with any narcotics, the affidavit referred to evidence of

---

[2] Cf. United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (even if a reviewing court would not have found probable cause, it must nevertheless uphold the warrant so long as the issuing magistrate's determination is consistent with the minimal substantial basis standard).

criminal conduct by another individual who connected drug activity to the defendant's residence. In rejecting the defendant's challenge, the court further held that it was sufficient, in a case without direct evidence of drug dealing from the residence to be searched, for the affiant to state that drug dealers will frequently keep business records, narcotics, and firearms in their residences. <u>Johnson</u>, 437 F.3d at 71-72 (citing <u>United States v. Thomas</u>, 989 F.2d 1252, 1255 (D.C. Cir. 1993)). The instant case is analogous. As with the affiant in <u>Johnson</u>, Marsh offered his own training and experience to attest to the fact that pimps often use cell phones in the course of conducting their daily business, in particular to keep track of the women who are prostituting for them.

14. The Motion to Suppress also ignores the direct evidence in the affidavit connecting the defendant with two cellular phones in the address to be searched. As the search warrant affidavit notes, the defendant was arrested while walking out of his residence at 2302 Minnesota Avenue, S.E. On the date of his arrest, the defendant instructed W-1 to retrieve one of his cell phones from upstairs in the house and to then to go back and get yet another cell phone. The defendant's request of W-1 confirmed that he was, at the least, storing personal items in that residence. The direct and indirect evidence of the defendant's criminal conduct and his residence at 2302 Minnesota Avenue, S.E. provided a substantial basis for Judge Beaudin to have made a determination of probable cause for the issuance of the search warrant in this case.

15. The defendant's contention that information from W-1 that was not credible or reliable, is without merit. As the court held in <u>United States v. Warren</u>, 42 F.3d 647 (D.C. Cir.1994), an anonymous informant can provide probable cause for a search warrant if "the informant has proven credible in other instances." <u>Id.</u> at 652. In this case, however, the search warrant was not issued exclusively on the basis of the W-1's information. W-1's information was corroborated by

information provided by the sixteen year-old pandering victim. Marsh included this information in the arrest warrant affidavit that was incorporated by reference to the search warrant affidavit. Moreover, W-1's information was corroborated by Marsh's direct observations while arresting the defendant at his residence on February 2, 2006 when he observed multiple cellular telephones. These factors in combination provided reliable and credible information to support a finding of probable cause by Judge Beaudin.

16. The defendant's characterization as "significant" the fact that the arrest warrant affidavit contained no information regarding the defendant's use of cell phones, is unavailing. The arrest warrant provided more than sufficient probable cause for the arrest of the defendant on a pandering charge against a sixteen year-old victim. Mention of the defendant's use of cell phones was not necessary to establish probable cause for his arrest.

17. The evidence found in the defendant's residence and car was seized pursuant to a valid search warrant containing reliable and credible information that supported a finding of probable cause. During the execution of this valid search warrant, the Titanic revolver was discovered in "plain view." For an item to be in "plain view," the Supreme Court held that

> [f]irst, not only must the item be in plain view, [but] its incriminating character must be "immediately apparent..." [and s]econd, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

Horton v. California, 496 U.S. 128, 136-137 (1990) (citing Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971)). Both of these conditions are easily satisfied with respect to the firearm found in this case. While executing the search warrant lawfully issued by Judge Beaudin on February 6,

2006, investigators recovered a Titanic .32 caliber revolver in Defendant's bedroom closet. The investigators discovered the firearm while searching for the items listed in the "items to be seized" section of Marsh's affidavit. The officers had lawful access to the closet, and once searching inside the closet they came upon the firearm whose incriminating character was immediately apparent. Because the circumstances of discovery satisfy the <u>Horton</u> test, the plain view doctrine clearly admits the firearm found in the defendant's closet.

      18.  Further, it is clear that the police executing the search warrant reasonably relied on the warrant signed by Judge Beaudin. Thus, the Court should not suppress any evidence gathered in reliance on that warrant. <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984). Suppression would only be appropriate if the judicial officer abandoned his or her detached and neutral role, or the affiant was dishonest or acted with reckless disregard for the truth in preparing the affidavit. <u>Leon</u>, 468 U.S. at 926. The defendant here does not and could not contend that Judge Beaudin had abandoned his detached and neutral role or that Investigator Marsh was somehow dishonest. Thus, the officers acted in good faith in relying on the warrant signed by Judge Beaudin. Even if the Court were to disagree with the finding of probable cause, suppression would not be the appropriate remedy. Therefore, the Motion to Suppress should be denied.

WHEREFORE, based upon the foregoing argument and authorities cited, the United States respectfully requests that the Motion to Suppress Physical Evidence be denied in its entirety.

Respectfully submitted

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: _____
KIM A. HERD, D.C. Bar No. 461615
Assistant United States Attorney
555 Fourth Street, N.W.
Room 10-840
Washington, D.C. 20530
(202) 616-9370

**CERTIFICATE OF SERVICE**

    I HEREBY certify that a copy of the foregoing Motion and proposed Order was served via electronic filing this 28th day of July 2006 on Mr. Carlos Vanegas, Assistant Federal Public Defender; 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004.

 

_____
KIM A. HERD
Assistant United States Attorney